Strafford,  
July 15, 1941. } No. 3259.

ROBERT G. WATKINS & SON, INC. *v.* JAMES A. CARRIG.

460

*Hughes & Burns* (*Mr. Walter A. Calderwood* orally), for the plaintiff.

*Snow & Peyser* (*Mr. Peyser* orally), for the defendant.

ALLEN, C. J. When the written contract was entered into, no understanding existed between the parties that no rock would be found in the excavating. The plaintiff's manager made no inquiry or investigation to find out the character of the ground below the surface, no claim is made that the defendant misled him, and the contract contains no reservations for unexpected conditions. It provides that "all material" shall be removed from the site, and its term that the plaintiff is "to excavate" is unqualified. In this situation a defence of mutual mistake is not available. A space of ground to be excavated, whatever its character, was the subject-matter of the contract, and the offer of price on that basis was accepted. *Leavitt* v. *Dover*, 67 N. H. 94. If the plaintiff was unwise in taking chances, it is not relieved, on the ground of mistake, from the burden incurred in being faced with them. The case differs from that of *King Company* v. *Aldrich*, 81 N. H. 42, in which the parties did not contract for the property delivered in purported performance of the contract actually made.

The referee's finding that the written contract was "superseded" by an oral contract when the rock was discovered is construed to mean that the parties agreed to rescind the written contract as

though it had not been made and entered into an oral one as though it were the sole and original one. The defendant either thought that the contract did not require the excavation of rock on the basis of the contract price or was willing to forego his rights under the contract in respect to rock. It was important to him that the work should not be delayed, and other reasons may have contributed to induce him to the concession he made. In any event, he consented to a special price for excavating rock, whatever his rights under the contract. The plaintiff on the strength of the promise proceeded with the work.

But the defendant contends that the facts do not support a claim of two independent and separate transactions, one in rescission of the written contract as though it were nugatory, and one in full substitution of it. All that is shown, as he urges, is one transaction by which he was to pay more for the excavating than the written contract provided, with that contract otherwise to remain in force. And upon the basis of this position he relies upon the principle of contract law that his promise to pay more was without consideration, as being a promise to pay the plaintiff for performance of its obligation already in force and outstanding. Whether the contract was rescinded with a new one to take its place or whether it remained in force with a modification of its terms, is not important. In the view of a modification, the claim of a promise unsupported by consideration is as tenable as under the view of a rescission. A modification involves a partial rescission.

In the situation presented the plaintiff entered into a contractual obligation. Facts subsequently learned showed the obligation to be burdensome and the contract improvident. On insistent request by the plaintiff, the defendant granted relief from the burden by a promise to pay a special price which overcame the burden. The promise was not an assumption of the burden; the special price was fair and the defendant received reasonable value for it.

The issue whether the grant of relief constituted a valid contract is one of difficulty. The basic rule that a promise without consideration for it is invalid leads to its logical application that a promise to pay for what the promisor already has a right to receive from the promisee is invalid. The promisee's performance of an existing duty is no detriment to him, and hence nothing is given by him beyond what is already due the promisor. But the claim is here made that the original contract was rescinded, either in full or in respect to some of its terms, by mutual consent, and since any rescission

mutually agreed upon is in itself a contract, the claim of a promise to pay for performance of a subsisting duty is unfounded. The terms of the contract of rescission are of course valid if the rescission is valid. The defendant's answer to this claim is well stated in this quotation from Williston, Conts., (2d *ed.*), s. 130a: "But calling an agreement an agreement for rescission does not do away with the necessity of consideration, and when the agreement for rescission is coupled with a further agreement that the work provided for in the earlier agreement shall be completed and that the other party shall give more than he originally promised, the total effect of the second agreement is that one party promises to do exactly what he had previously bound himself to do, and the other party promises to give an additional compensation therefor."

With due respect for this eminent authority, the argument appears to clothe consideration with insistence of control beyond its proper demands. With full recognition of the legal worthlessness of a bare promise and of performance of a subsisting duty as a void consideration, a result accomplished by proper means is not necessarily bad because it would be bad if the means were improper or were not employed.

It is not perceived that the requirement of consideration is necessarily disregarded in spite of the net result of a promise to pay more for less, without additional obligation of the promisee. If the process in reaching such a result is inoffensive to the doctrine of consideration, the result does not become a naked promise. If in analysis of the transaction compliance with the elements of a valid contract may be found, it is hardly a perversion of principle to give the steps taken recognition. The result being reasonable, the means taken to reach it may be examined to determine their propriety.

In common understanding there is, importantly, a wide divergence between a bare promise and a promise in adjustment of a contractual promise already outstanding. A promise with no supporting consideration would upset well and long established human interrelations if the law did not treat it as a vain thing. But parties to a valid contract generally understand that it is subject to any mutual action they may take in its performance. Changes to meet changes in circumstances and conditions should be valid if the law is to carry out its function and service by rules conformable with reasonable practices and understandings in matters of business and commerce.

Rescission in full or in modification being intended, it should be effective although the result benefits only one party and places a

burden only on the other. It is the fact of rescission rather than the effect of it that determines its legal quality. The difference between a rescission unrelated to a new contract and one interdependent with a new contract, with the result the same in each case, signifies no failure of consideration in the latter case. The result, whatever it may be, is indecisive of the contractual character of the transaction. The steps taken being pointed out by the law, the result should not be held an idle one. Merger of the rescission and promise into one transaction does not destroy them as elements composing the transaction.

In another analysis of the transaction, more than a naked promise to pay more than the promisor owed appears. The promise was accompanied by the mutual understanding that the terms of the contract were to be modified. The conclusion follows that if the promisor had the right under the contract to have rock excavated at the same price as was to be paid for other material, he surrendered it. Conceding that the plaintiff did no more than the contract called for, yet if it was presented with a discharge from its duty, as an element of the transaction, by application of the law of gifts a completed discharge of a liability was validly effected. The form of statement by which one surrenders a right, if the law does not have special requirements for it, may be in any words showing the act to be one of making a present. The gift here was not of the promise to pay more, but of release of the plaintiff's duty to work for less. Whether it was, in its character and form, a gift to which the law attaches validity, is to be considered.

It is true that by the weight of authority an oral gift of a *chose in action* is legally ineffective, in respect to a transfer to one not the debtor. The relation between the creditor and the debtor is personal, and by common law the creditor's title is not assignable. So far as under equitable doctrines one may assign, as a present, the use and benefit of his intangible rights, a verbal statement of the transfer is ineffective. Williston, Conts., (1st *ed.*), *s.* 440. But when a creditor releases his debtor, without full payment of the debt, no assignment is involved. The debt is extinguished, and if the release is in full or partial measure a present, the present is perfected. If the creditor agrees to take a part of the debt in full payment, and the part is paid, no exception to the need of consideration is apparent. The completed transaction is of a promise fulfilled. The debt is satisfied, according to the intention of the parties, and it is thought that the law should validate the action. The law has

no policy that a creditor may not make voluntary and gratuitous concessions to his debtor. It is the everyday experience of business life, and is consistent with legal principle, and no rule of the law of evidence interposes to require proof of the present by other than oral testimony of it.

The argument for validity of the release is as strong as in the cases of a promise by a debtor to pay a debt barred by bankruptcy or by the statute of limitations (*Underwood* v. *Eastman*, 18 N. H. 582; *Wiggin* v. *Hodgdon*, 63 N. H. 39). In such cases, while the cause of action survives, the debtor gives away his right not to be sued upon it, without receiving anything in return for the surrender. The ground upon which the cases are usually put, of a past consideration, or of one implied, is illogical, and in resting upon it they are anomalous. But upon the view of a release presented legal consistency is maintained.

In *Frye* v. *Hubbell*, 74 N. H. 358, it was held that payment of part of a debt accepted in full payment discharged liability for the balance. The result followed an extensive review of the transaction from the standpoint of contract law with a conclusion that adequate consideration appeared and that "the greater principle that reason is the life of the law" (*p.* 377) should prevail. The opposing weight of authority and the difficulties of finding legal consideration were recognized. The need of consideration was assumed, but, as it is thought, unnecessarily. The surrender of the evidence of the debt was not an essential of the discharge of the debt. Part payment accepted in discharge effected the discharge. It is not perceived that there is any difference when an intangible right is voluntarily presented. If in the *Frye* case a nominal payment had been accepted in full discharge, the discharge would have been complete, and any present day requirement of tokens deserves scant recognition by the law. In sum and substance the nominal payment connotes a gift of substantially the entire debt, and to say that it is necessary to validate what is in fact and reality given is a distortion of common sense and ordinary understanding. The parallelism is so great as to amount to equality. In each case a release from a duty is donated.

Whether the gift to a debtor of an intangible right be termed a waiver, a surrender, an abandonment, or a release, seems broadly immaterial. Its nature, in yielding the right, or in forgiving the obligation, is determinative, rather than its appellation. There may be distinctions and discriminations in the required manner of their metaphysical delivery, but here, as established by the *Frye*

case, no symbolism or particular form of evidence is an essential of proof. The case is one of a simple relinquishment of a right pertaining to intangible personalty. The defendant intentionally and voluntarily yielded to a demand for a special price for excavating rock. In doing this he yielded his contract right to the price it provided. Whether or not he thought he had the right, he intended, and executed his intent, to make no claim of the right. The promise of a special price for excavating rock necessarily imported a release or waiver of any right by the contract to hold the plaintiff to the lower price the contract stipulated. In mutual understanding the parties agreed that the contract price was not to control. The contract right being freely surrendered, the issue of contract law whether the new promise is valid is not doubtful. If the totality of the transaction was a promise to pay more for less, there was in its inherent makeup a valid discharge of an obligation. Although the transaction was single, the element of discharge was distinct in precedence of the new promise.

The foregoing views are considered to meet the reasonable needs of standard and ethical practices of men in their business dealings with each other. Conceding that the plaintiff threatened to break its contract because it found the contract to be improvident, yet the defendant yielded to the threat without protest, excusing the plaintiff, and making a new arrangement. Not insisting on his rights but relinquishing them, fairly he should be held to the new arrangement. The law is a means to the end. It is not the law because it is the law, but because it is adapted and adaptable to establish and maintain reasonable order. If the phrase justice according to law were transposed into law according to justice, it would perhaps be more accurately expressive. In a case like this, of conflicting rules and authority, a result which is considered better to establish "fundamental justice and reasonableness" (*Cavanaugh* v. *Railroad*, 76 N. H. 68, 72), should be attained. It is not practical that the law should adopt all precepts of moral conduct, but it is desirable that its rules and principles should not run counter to them in the important conduct and transactions of life.

*Exceptions overruled.*

BURQUE, J., did not sit: the others concurred.