65 So.2d 533

### KILBORN et al. v. HENDERSON.

I Div. 623.

Court of Appeals of Alabama.

May 19, 1953.

174

Vincent F. Kilborn and Fred G. Collins, Mobile, for appellants.

D. P. Moore, Mobile, for appellee.

PRICE, Judge.

The trial was had upon counts Nos. 2 and F of the complaint and resulted in verdict and judgment for plaintiff for $150.

Count 2 is for damages for breach of warranty in the sale of an automobile, in that the automobile was warranted to be a 1940 Mercury, when in fact it was not a Mercury automobile.

Count F is to recover the alleged value of a Hudson automobile, accepted by defendants as part payment for the automobile purchased by plaintiff. It alleges:

"F: Plaintiff claims of the defendants the sum of One Hundred and Fifty Dollars, for this: That on to-wit, the 17th day of September, 1949, the plaintiff purchased from the defendants a Mercury automobile, and that on or about the 17th day of October, 1949, the plaintiff returned and restored to the defendants said automobile, which defendants at once repossessed and rescinded said purchase.

"That defendants had accepted as a down payment on said purchase of said Mercury Automobile, a Hudson Car at an agreed valuation of $150.00 but that after said rescission of said purchase of said Mercury, defendants refused to restore to plaintiff said Hudson car or pay him its reasonable market value, hence he sues for its reasonable market value of One Hundred and Fifty Dollars."

Appellant assigns as error the refusal of the court to give peremptory instructions requested by him as to each of said counts.

The plaintiff contended that on September 17, 1949, he bargained with defendants for a 1940 Mercury automobile, valued at $449 and defendants accepted as down payment on the purchase price of said automobile a 1937 four-door eight cylinder Hudson automobile at an agreed valuation of $150, the remainder of the payments to be made on a monthly basis, beginning October 17, 1949.

There was nothing in the appearance of the automobile to indicate it was not a Mercury, but shortly after he bought it he had occasion to make some repairs and found that Mercury rings would not fit and upon investigation discovered the automobile had a Ford motor of a 1932 to 1936 model.

He returned the automobile to the Y Auto Sales Company around the 15th or 17th of October, before the first payment was due. The Hudson automobile was not returned to him and its reasonable market value was $150.

On cross examination defendant offered as exhibit A the conditional sale contract executed by the parties contemporaneously with the sale of the automobile. The property was there described as a Mercury 2 dr. Motor No. 99 A 177044, 8 Cylinder 1940 Model, license 5 C 3863.

Plaintiff testified the number, listed in the contract as the motor number, was on the car frame and the motor he got was not that number. A Ford also has the number on the frame, but Mercurys and Fords carry altogether different numbers. Since the motors are not numbered there is no possible way to identify them by number. 99 A 1–77044 was the number of the frame and the body and was supposed to be the number of the whole car. At the time of the trade he drove it around to see if the transmission was all right, but could not determine on reasonable inspection that it was a Ford motor. He testified they didn't switch the motor after he bought it. He didn't know who installed that motor in there, but it was just in there. The car was less valuable with the Ford motor than it would have been with a Mercury motor.

For the defendant the used car sales Manager for Rawlings Motor Company, Lincoln and Mercury dealer, stated he had been in the automobile business since 1934. He is familiar with 1940 Mercurys and was familiar with their reasonable and fair market value in 1949. There would be no way to tell upon examination of the auto-

mobile set out in the contract, or one described in that fashion, whether or not it was equipped with a 1940 Mercury engine or otherwise.

The only way to tell the difference between a Mercury and a Ford engine is the interior of the engine, the bore, the stroke and the crank shaft. On a 1940 Mercury the motor number is on the left hand side of the frame or on the clutch housing, which is under the floor board, and there would be no way to tell from the number on that frame whether the identical motor which had originally been assigned to that body was still in it. Assuming that a 1940 Mercury motor was in the frame and was in the identical condition as to wear and tear and use as an earlier Model Ford motor in the same frame, there would be no difference at all in the value of the 1940 model Mercury with a 1940 Mercury motor and a 1940 Model Mercury frame with the older motor, because the engines of a V 8 Ford and a Mercury are interchangeable without there being a reference to motor numbers. He stated he couldn't tell from the contract whether there is an engine in it, because none of the Ford products has the number on the engine.

On cross examination the witness testified if the hood were raised it might not be possible to tell what kind of engine was in the car. A used car accumulates a lot of grease around the engine. There could be a difference in the size of the rings in a 1932 to 1936 model Ford motor and a Mercury motor. He has probably sold several hundred Mercurys with Ford engines in them. If he put a Ford engine in and knew it was a Ford engine he might tell the customer it was a Ford motor.

On redirect examination he stated that the exact type engine could not be determined unless the engine was taken down and measured with a micrometer.

Charles Kilborn, one of the defendants, testified he did not personally sell the automobile to plaintiff, but remembers his buying it from his company. So far as defendant knows plaintiff was sold exactly what was agreed upon. The contract expresses what was sold him and there was no discussion whatsoever as to whether the car had a 1940 engine or an earlier model engine. He doesn't know whether the car had a 1940, 1950, or a Mercury or Ford engine. It looked to be a Mercury engine and was running. Plaintiff inspected the car, looked under the hood, drove the automobile and seemed satisfied with it. He made no complaint that it was not a 1940 Mercury engine until after the first note was past due and the bank notified defendants to collect it or to repossess the automobile. Mr. Henderson then came in to see about it. He never agreed with plaintiff the whole deal would be off and the contract rescinded. He and Mr. Barnes were the only persons authorized to make such agreement and Mr. Barnes is not active in the business. The value of the automobile with the engine it had in it would be the same as a 1940 Mercury with a 1940 Mercury engine, if both were in the same condition. The car was identified by the motor number only, which is on the frame and is not on the motor anywhere. There is no statement in the contract that he sold him a 1940 motor. He sold him the motor number and as far as witness knows he got the motor which had that number.

The witness testified on cross examination that he accepted from plaintiff a Hudson car as a down payment of $150. He later sold it for junk but doesn't remember what he got for it. He sold the Mercury after waiting a year or so for the case to come up. It was sold at junk price after sitting out in the weather. The payment was past due and plaintiff had refused to pay it, and defendant would have repossessed the car if it had not been brought back and was in the process of beginning to repossess it when it was brought back. He sent a collector to see plaintiff and no offer was made to pay the note. He doesn't remember the price he got for the Hudson or the Mercury, but never realized $449 out of either of them.

On redirect examination the witness stated the car was exactly as represented to

plaintiff and was described in the only way it can be identified.

On cross examination he testified he had both cars in his possession for quite awhile, but didn't hold them in trust for plaintiff one day.

■ Appellants contend that under the evidence appellee was to receive the automobile he examined at appellants' place of business, and the evidence fails to sustain the charge that appellant warranted to appellee that he was getting anything other than a 1940 Mercury 2 door automobile, Motor No. 99 A 177044, and that that is exactly what appellee received.

■■ The general rule is that there is no implied warranty of the quality or condition of a used automobile and the rule of caveat emptor applies. 77 C.J.S., Sales, § 330, p. 1199. But express warranties may be given in the sale of a used motor vehicle and it is a material representation that it is of a certain year of manufacture. Williams v. McClain, 180 Miss. 6, 176 So. 717.

■ "A contract of sale of a motor vehicle designating it as a model of a particular year constitutes a warranty that it is of that model, and the warranty is broken by delivering to the buyer a model of a different year." 77 C.J.S., Sales, § 330, p. 1201.

■ "An examination by a prospective buyer of a motor vehicle to ascertain its condition does not exclude his right to rely upon the seller's false representation as to the year of manufacture." 42 C.J., Motor Vehicles, § 313, p. 778; Williams v. McClain, supra.

We think it a matter of common knowledge that the engine is an essential part of an automobile and are of the opinion a purchaser would have the right to expect an automobile described in the contract of sale as a 1940 Mercury to contain an engine of that make and model.

The evidence presented a question for the determination of the jury.

■ It is settled law that in order to support an action for a breach of warranty there must be a subsisting contract, and if the contract has been effectually rescinded, the foundation of such a suit is destroyed. Taylor v. P. B. Yates Machine Co., 208 Ala. 528, 94 So. 588; Abraham Bros. v. Browder, 114 Ala. 287, 21 So. 818; Baer & Co. v. Mobile Cooperage Co., 159 Ala. 491, 49 So. 92; McAllister-Coman Co. v. Matthews, 167 Ala. 361, 52 So. 416; National Supply Co. v. Southern Creamery Co., 224 Ala. 507, 140 So. 590.

■■ "When goods have been delivered to the buyer under a contract of sale, and he returns them to the seller, and the latter accepts the redelivery, and resumes and retains possession of the property as his own, and does not notify the buyer that he intends to hold it subject to his order to sell it for his account the transaction operates as a complete rescission of the contract of sale * * * whether or not there has been a rescission of a contract should ordinarily be left to the decision of the jury, upon consideration of all the pertinent evidence." (2) Black on Rescission (Sec. 531). See also Taylor v. P. B. Yates Machine Co., supra; National Supply Co. v. Southern Creamery Co., supra; Keystone Manufacturing Co. v. John M. Hampton, 141 Ala. 415, 37 So. 552.

The plaintiff testified he drove the automobile approximately two weeks before he pulled it down to work on it. As soon as he discovered it had a Ford motor he went to see John Kilborn and told him the condition of the car and when he got the car back in running condition he took it back to the lot and gave the car and the key to John. He said he tried to get John to do something about it and John wouldn't do anything about it. He could never see Charley Kilborn to talk to him about it when he took it back.

Charley Kilborn testified that John Kilborn was a salesman in his employ. He stated: "Mr. Henderson saw me himself when he came back in and never asked a question about anything whatsoever." He insisted there was no rescission and that

the property was not returned until after the first installment was due and it was repossessed under the terms of the contract for plaintiff's failure to pay.

As above stated, the matter of rescission is generally a question of intention, and under the evidence was for the jury's determination.

Appellants insist in brief that they were entitled to the requested peremptory instruction as to count F because it does not state a substantial cause of action, in that, it fails to allege that the contract of sale for the Mercury was executory, being a conditional sale contract with payments remaining due on the contract, and if the contract was executed it could not be rescinded; there was no allegation that the parties rescinded by agreement; it is impossible to determine from the allegation whether plaintiff or defendant rescinded the contract and that the allegations of repossession by defendant negatives any idea of rescission by agreement.

The overruling of the demurrer to the complaint, which takes none of the points insisted upon in brief, is not assigned as error and is not before us for review.

Appellant relies upon the holding in the case of Alabama Power Co. v. Curry, 228 Ala. 444, 153 So. 634, to the effect that if the complaint fails to state a cause of action, even though no demurrers are interposed, the defendant may have the benefit of such failure by various methods, including the request for the affirmative charge.

However, if the actions of the parties constituted an effectual rescission of the contract and if the facts justified it, the plaintiff was entitled to the return of the consideration paid for the property, Maples v. Douglass, 205 Ala. 94, 87 So. 585; 24 R.C.L. p. 276; Holmes v. Borowski, 233 Mich. 407, 206 N.W. 374; Greder v. Stahl, 22 S.D. 139, 115 N.W. 1129; Kundel v. Portz, 301 Mich. 195, 3 N.W.2d 61, and he could have elected to proceed under the common counts for money had and received. Day v. Broyles, 222 Ala. 508, 133 So. 269; Kennedy v. Collins, 250 Ala. 503, 35 So.2d 92.

In the case of Hendrix v. Pique, 237 Ala. 49, 185 So. 390, 394, the court held:

"When the purpose is only to recover a sum of money, not specific property, whether that money is due by reason of an executed contract, or because equity creates a constructive trust of it, and no relief is sought but a personal judgment, it is not necessary to declare on the contract or specify the circumstances out of which the trust arises in a suit at law. The common counts are sufficient."

The complaint stated a substantial cause of action against the defendant which will sustain a judgment.

■ Ordinarily, a party has an election of remedies, to affirm the contract and sue for damages for the breach of warranty, or to rescind the contract, return the property, and seek a refund of the consideration paid.

In the case of Abraham Bros. v. Means, 16 Ala.App. 42, 75 So. 187, 188, certiorari granted on another question, Judge Samford observed:

"Under section 5328 of the Code, all actions on contract may be joined in the same action and separate verdicts rendered. But when one party to a contract repudiates it, the injured party may elect to pursue one of several remedies; and when these remedies carry a different measure of relief, they cannot be concurrently pursued * * * Count 2 in this case was for a breach of warranty in the sale of the mule, the measure of damages being the difference between the value of the property as it actually was at the time of sale and what it would have been worth had it been as warranted. * * * Count 3 was for money had and received, in which the measure of recovery was the amount paid, with interest. The first was based on the contract of sale, and the latter on a rescission of the contract, entirely inconsistent remedies growing out of the same transaction". And in denying the second application for rehearing in this case, 16 Ala.App. 429, 78 So. 459, 460, the court stated:

"Issue being joined on both counts, and there being evidence tending to sustain each of the counts, the refusal to give the affirmative charge as to either count was not error. Both counts being before the jury, and there being evidence tending to support each, the court properly charged on the law as applicable to each count."

The Supreme Court held in the case of First National Bank v. Morgan, 213 Ala. 125, 104 So. 403, 405:

"Conceding, without deciding, that, where it affirmatively appears from the pleading the existence of the cause of action in one count depends upon the waiver of the cause of action stated in another, or where the same situation develops from the evidence in the cause, the measure of damages being different, an election may be required by the court, there was evidence in this cause in support of each count, * * * plaintiff was entitled to go to the jury on both."

There was evidence in support of each count in this case, and the defendant was not entitled to the peremptory charge as to either count of the complaint.

There was no error in overruling objections to the following questions propounded to plaintiff on the grounds that the plaintiff was not qualified to testify as an expert:

"Q. Do you know the size of the rings that go into a 1940 Mercury?

"Q. Do you know of your own personal knowledge approximately what model Ford that was?

"Q. Do you know of your own personal knowledge as to the studs in a 1932 to 1936 Ford, and the studs in a late Ford?"

The questions were merely preliminary in character. Ala.Digest, Witnesses, ☞ 236(2).

Affirmed.