Sullivan
No. 6937

MICHAEL H. SIMPSON

v.

RICHARD L. SIMMONS d.b.a. OLE VOLK'S HOME

October 31, 1974

*John C. Fairbanks* and *Michael J. Work (Mr. Work* orally) for the plaintiff.

*Richard L. Simmons,* by brief and orally, pro se.

PER CURIAM. The issue in this case is whether the evidence compelled a verdict for the plaintiff instead of the defendant's verdict rendered by the trial court. We hold that it did not.

Plaintiff's declaration alleges fraud and deceit in the sale by the defendant of a 1969 Volkswagen to the plaintiff. A trial by the court resulted in a verdict for the defendant. Plaintiff's motion to set aside the verdict as against the weight of the evidence and against the law "established in *Maxwell Ice Company v. Bracket, Shaw & Lunt Company,* 80 N.H. 236" was denied subject to exception which was transferred by *Dunfey,* J. (The *Maxwell* case holds a negligent representation to be actionable.)

Certain facts in this case at bar are undisputed. In January 1973 the plaintiff, a resident of Sunapee, New Hampshire and a student in Ohio, went to defendant's place of business to buy a used Volkswagen to drive back to Ohio. He was shown two: a 1964 VW and the 1969 VW which he bought after driving it and consulting with his father. He received a warranty against major breakdown if returned to defendant's shop within thirty days of purchase. The price paid was $700 plus the trade-in of a 1961 Corvair which defendant valued at $100. The book value of a 1969 VW was $1,300 but plaintiff was told that the car had been in a wreck which accounted for the body damage, and that was the reason for the lower price. Plaintiff was also told that the car had been purchased for defendant's family use two months before with 23,000 miles on it and that the additional miles had been put on by him. At the time of purchase, the odometer reading was 24,616.

Plaintiff testified that two days after purchasing the car he left for Ohio, that the car seemed to be working okay,

and that he drove it for sixteen hours. He testified, however, that the brakes did not work well and that he found them to be worn and had them relined. He was told also his CV joints were bad so he had them replaced and an oil leak fixed. He further testified that he was told that the car had an older engine. He returned to New Hampshire with the car for his spring vacation and took the car to Marcotte's Volkswagen garage because the clutch was slipping. He was told the car had the wrong flywheel and that it did not mesh properly with the starter. The service manager from Marcotte's testified that when he examined the 1969 car, he found it had a 1963, 50-horsepower VW bus engine.

There was evidence that it was not uncommon for VW owners to change engines and parts which are interchangeable, and that it is difficult to tell the year or horsepower of an engine without a serial number check. Defendant produced the Chevrolet dealer from whom he had purchased the car, who testified defendant said he wanted the car for his family use, that the car was operating all right. Defendant's wife and a former employee testified to their use of the car during the two months defendant owned it and that it ran well and was trouble free during that period.

Although it was findable that the car purchased by plaintiff contained an engine and other parts which were different from what had been originally installed by the manufacturer, the plaintiff admits that there is no evidence that defendant knew this at the time of the sale. Plaintiff, however, contends that defendant negligently misrepresented the car and relies on *Rowell v. Chase,* 61 N.H. 135 (1881), *Maxwell Ice Co. v. Company,* 80 N.H. 236, 116 A. 34 (1921), and *Spead v. Tomlinson,* 73 N.H. 46, 59 A. 376 (1904). However, there was no specific representation that the car contained a 1969 engine or that all the parts were original. Defendant told plaintiff that the car had been in a wreck, that he had not done the repair work on it, and that this was the reason for selling it for about $500 below the book price. It was findable that the car did in fact run well while defendant owned it as he had told the plaintiff. Considering all the evidence, we cannot say that the trial court was compelled to find that defendant was guilty of either intentional or

negligent misrepresentation. *Sargent v. Janvrien,* 109 N.H. 66, 242 A.2d 73 (1968).

*Exception overruled.*

KENISON, C.J., and LAMPRON, J., dissented.

KENISON, C.J., dissenting: I dissent on the ground that the verdict is contrary to the law. The common law doctrine of *caveat emptor* has been repeatedly eroded by the courts and legislatures in order to afford the consumer increasing protection against the pitfalls of contemporary purchasing. In addition to the expansion of the traditional remedies of fraud and deceit, the scope of protection has been widened by the Uniform Commercial Code through warranties, both express and implied, that have been made an integral part of typical sales in the absence of specific exclusion. RSA 382-A:2-313, -314. The distinction between fraud and the various warranties has become progressively blurred through growth of the remedies themselves. W. Prosser, Torts § 105 (2d ed. 1971). Furthermore, the long tradition in this State of a liberal approach to pleading *(Dupuis v. Smith Properties,* 114 N.H. 625, 325 A.2d 781 (1974); *Owen v. Weston,* 63 N.H. 599, 600, 4 A. 801, 802 (1885)), make it more meaningful in this case to speak in terms of defendant's conduct rather than whether plaintiff pleaded fraud or breach of warranty. Although plaintiff's claim is couched in terms of fraud or deceit, his claim for relief involves questions of warranty as well. Therefore, the essential question in this case is whether defendant's conduct justified recovery for plaintiff under the applicable law.

In sustaining the verdict of the trial court the majority relies on two basic facts: that there was no specific representation that the car contained a 1969 engine and that there was no evidence indicating that defendant knew that the engine was an earlier model. However, in the title, in the bill of sale and in conversations with plaintiff, defendant represented that the automobile in question was a "1969 beetle". Common sense would lead the reasonable buyer to conclude that it had a 1969 engine, and several courts have found an express warranty to that effect. Annot., 36 A.L.R.3d

125, 139, 195 (1971); *Kilborn v. Henderson,* 37 Ala. Ct. App. 173, 65 So. 2d 533 (1953). As the court in *Kilborn* stated: "We think it a matter of common knowledge that the engine is an essential part of an automobile and are of the opinion that a purchaser would have the right to expect an automobile described in the contract of sale as a 1940 Mercury to contain an engine of that make and model." *Id.* at 177, 65 So. 2d at 536. This position is sustained in the Uniform Commercial Code. RSA 382-A:2-313 (1) (b). If a description of an item is part of the basis of the bargain, as the portrayal of the car as a 1969 model was in this instance, an express warranty is created without specific intention of the parties to do so. *See* RSA 382-A:2-313, Comment 3.

Contrary to what the majority contends, several uncontradicted facts in the record indicate that defendant had or should have had knowledge of the engine's age. Simmons was a dealer in Volkswagens. Undisputed testimony shows that when plaintiff visited defendant's place of business, he was shown not only the car which he ultimately purchased but also a 1964 model. That testimony further indicates that with regard to the 1964 model Simmons pointed out to plaintiff that it contained a rebuilt engine as indicated by an "X" on the last digit of the motor's serial number. Yet, Simmons said nothing about the 1969 car aside from the fact that it was a 1969 model. An expert mechanic with thirteen years of experience in dealing with Volkswagens testified that the position of the generator and the presence of a governor are completely foreign to a 1969 beetle and that these unusual characteristics are readily observable without doing any work on the engine. According to his own wife's testimony, Simmons worked on the engine to the extent of replacing a carburetor spring. Testimony of the plaintiff as well as that of Simmons's wife establish that the car had been damaged in the rear and that was the reason for selling it $500 below the market value. The fact that considerable body work had been done to the rear of the car where the engine is located would have indicated to a dealer in Volkswagens the probability of engine replacement. Where a dealer represents in the title, in the bill of sale and in conversations with the prospective buyer that a car is a certain model, he should be charged

with knowledge of or a duty to discover the engine's age. *Mayfield Motor Co. v. Parker,* 222 Miss. 152, 159, 75 So. 2d 435, 437 (1954); *Maxwell Ice Co. v. Company,* 80 N.H. 236, 239, 116 A. 34, 36 (1921).

Defendant contends, however, that plaintiff may have changed engines prior to complaining. The vehicle was sold to plaintiff on January 20, 1973. Plaintiff's exhibit No. 2 reveals that plaintiff learned of the presence of an older engine in the car on February 15, at which time he immediately notified his father who contacted defendant. It seems incredible that plaintiff would replace an engine on his own that was still covered by a 30-day express warranty covering labor for major engine repairs.

"It is not practical that the law should adopt all precepts of moral conduct, but it is desirable that its rules and principles should not run counter to them in the important conduct and transactions of life." *Burtman v. Butman,* 94 N.H. 412, 417, 54 A.2d 367, 371 (1947); *Watkins v. Carrig,* 91 N.H. 459, 465, 21 A.2d 591, 594 (1941).

LAMPRON, J., joins in this dissent.