This appeal is from a judgment in favor of defendants on their counterclaim to a suit in detinue. We reverse the judgment.
Appellant, Trax, Inc. (hereinafter Trax), filed a complaint, Count One in detinue, Count Two for conversion, of a Caterpillar tractor. The alternative value was stated to be $9,130.19. After filing the proper bond, and after a hearing, Trax, acting under the trial court's writ of seizure, took *Page 276 
possession of the tractor pending trial. Defendants (hereinafter Tidmore) filed an answer and counterclaim. The counterclaim also claimed the right of possession and charged conversion of the tractor.
The jury found in favor of Tidmore for property sued for, or its alternative value of $22,000.00, plus $5,000.00 damages, for unlawful detention and breach of warranty. Appellant filed a motion for new trial which was denied.
Appellees, John and Cary Tidmore, brothers, owned three tractors. These tractors were subject to a mortgage held by Thorpe Sales Corporation, of Mississippi. Thorpe was threatening to foreclose. John Tidmore persuaded appellant to pay off the mortgage. Trax paid "in the neighborhood of sixteen thousand dollars for the three pieces." Under the agreement made between Tidmore and Trax, Tidmore was given an option to buy back the three tractors within a 180-day period at specified prices plus hauling, repairs and interest. If Trax sold any of the tractors during the option period, Tidmore was to be paid an agreed upon sum by Trax for relinquishment of the option to buy.
Tidmore bought back one of his former tractors; Trax sold one. The remaining tractor, a Caterpillar D8H, serial number 46A7799, is the subject of this lawsuit. It seems that John Tidmore called Trax to see if he could rent the D8H so that Cary could build some catfish lakes. Trax agreed to repair the tractor (it had a faulty crankshaft and an oil leak, among other infirmities) and received the first month's rent from Tidmore. No more rental payments were received by Trax. Also, Tidmore failed to pay insurance charges and shipping charges itemized by Trax on the first month's invoice, which also itemized the rent.
A year later, Tidmore asked Trax for a bill for the tractor. Up until the time, John had maintained that he was only interested in renting the tractor. The bill sent by appellant was in the amount of $5,612.47 — the sum of repairs made to the tractor. Trax explained to John that if Tidmore bought the tractor they had to pay the repair bill, but if they rented it they would not be responsible for the repairs.
Tidmore questioned the correctness of the repair bills, so Trax sought estimates from two other Caterpillar dealers. (The estimates were comparable.) Trax sent the estimates to Tidmore and reminded them that if they chose to buy the D8H, they would be liable on the repair bill. Tidmore made no attempt to pay the repair bill, pay the rent, or purchase the tractor. Finally, in December, 1973, fifteen months after the rental agreement was made, Trax initiated the detinue action. The trial followed, and the verdict was in favor of Tidmore on their counterclaim. Trax's motion for new trial was denied. Counsel on appeal for Trax is different from Trax's trial counsel.
Five assignments of error are argued by Trax. Since this judgment is to be reversed, we write to only one, that being the question of implied warranty.
There is a definite question of fact as to whether there ever was a sale of the tractor from Trax to Tidmore, but the jury had to find that there was a sale in order to find for Tidmore on the counterclaim. This opinion is written on the basis that there was a sale, but the question of sale remains open in the event of another trial.
Trax, by objections during the trial and in its motion for a new trial, raised the issue that there was no question of an implied warranty in the case. Tidmore contends that there was an implied warranty under the Uniform Commercial Code, § 2-314. We cannot agree.
The UCC, § 2-313 (1)(b), provides that "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." There is no contention that this express warranty *Page 277 
was breached. The tractor involved in this suit was the tractor described. This is different from the former Uniform Sales Act which provided that "While the Uniform Sales Act spoke of a sale by description as giving an implied warranty, the Uniform Commercial Code treats such a sale by description as an express, not an implied, warranty." 67 Am.Jur.2d, Sales, § 449, p. 615.
The law in Alabama regarding sales of used or second-hand vehicles was stated in Kilborn v. Henderson, 37 Ala. App. 173,65 So.2d 533 (1953): "The general rule is that there is no implied warranty of the quality or condition of a used automobile and the rule of caveat emptor applies." The UCC became effective in this state at midnight, December 31, 1966. We are aware of no appellate cases in Alabama dealing with implied warranties on the sale of used motor vehicles, as is the case here, under UCC. The following statement appears in 22 A.L.R.3d 1401 in the annotation "Used Motor Vehicle — Implied Warranty." "No case has been found so far in which the provisions of the Uniform Commercial Code were applied to questions relating to the liability of a seller on implied warranties in the sale of a used motor vehicle."
The Official Comment on § 2-314 states that "A contract for the sale of second-hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description." We list a case where an implied warranty was applied to the sale of used automobiles. In Overland Bondand Investment Corp. v. Howard, 9 Ill. App.3d 348,292 N.E.2d 168 (1972), the court after discussing the probability that § 2-314 was "inapplicable to used car sales," held that § 2-315 is not applicable to the instant case.
Anderson, 1 Uniform Commercial Code, § 2-314:104 (2d Ed. 1971), states in part as follows:
 "The fact that the subject of the contract for sale is secondhand goods does not in itself preclude the existence of a warranty of merchantability, although this fact is to be considered in determining what the actual intent of the parties was.
 "Although there is a conflict of authority, it is the general rule that there is no implied warranty as to the condition, adaptation, or suitability for the purpose for which made or the quality of an article sold as and for a secondhand article."
We make no attempt to set out any broad principles to govern implied warranties in the ordinary sales of used motor vehicles in the future. We hold only that there was no implied warranty connected with the transaction in this particular case. The facts here are unique. Tidmore had owned the tractor, used it, and knew much more of its quality and condition than did Trax. Tidmore persuaded Trax to purchase it by paying off the mortgage on it and two others Tidmore had owned and used. Tidmore either rented or purchased the tractor from Trax after Trax had repaired it.
There could be no implied warranty under § 2-315 because there was no evidence that the buyer (or renter) Tidmore was "relying on the seller's skill or judgment to select or furnish suitable goods." Here, the Tidmores selected the tractor they wanted, and John Tidmore testified that his brother Cary needed to rent a tractor to build some catfish ponds:
 "* * * And I said, `Cary, you might as well rent this D-8, or buy it back and we can get it back for five thousand dollars and do some work on it and you can go ahead and build the lakes and then sell the thing'. That is what we agreed to do and Cary said he would do it.
"Q Did you contact Mr. McCondichie? *Page 278 
 "A I did and told him what we wanted to do and how we had talked about getting it back that way and he said the engine needed some repair on it and I was busy and Cary was busy and didn't have time to do it and I asked him would he do the repairs on the engine, he agreed to do it."
It is evident that Tidmore did the selecting of the tractor without any reliance on Trax.
The trial court erred to reversal in submitting the issue of implied warranty to the jury.
REVERSED AND REMANDED.
HEFLIN, C.J., and MADDOX, JONES and SHORES, JJ., concur.