The defendants, Curry Motor Company, Inc., and C.E. Curry, appeal from a judgment entered pursuant to a jury verdict in favor of the plaintiff, James R. Hasty, in a case alleging breach of warranty and fraudulent misrepresentation in the sale of a used truck. We affirm.
The issues presented are (1) whether the disclaimer of warranties provision and the words "sold as is" in the bill of sale preclude a recovery under the breach of warranty count, and (2) whether there was evidence to support an award of punitive damages for fraud.
The evidence presented at trial revealed the following. In late November 1983, James R. Hasty went to Curry Motor Company (hereinafter "Curry Motor") and talked to Curry Motor's salesman, C.E. Sanders, about a green Ford pickup truck on Curry Motor's lot. The truck had been purchased nine months earlier by Mr. Curry, the owner of Curry Motor, at an automobile auction in Boaz, Alabama.
Hasty inquired about the accuracy of the odometer reading, the stereo system, and the mechanical and body condition of the truck. Sanders told Hasty that the truck was a 1979 model, and that he (Sanders) had driven the truck, that it was in good shape, and that it had had $500 worth of work done on the engine. Mr. Curry testified that the truck's engine had been overhauled in the fall of 1983 because the truck "was using some oil." Although he did not have a receipt or cancelled check, he testified that he paid for the repair work some time in the spring of 1984, after Hasty had purchased the truck. Hasty also asked about the size of the engine. He was shown a decal on the underside of the truck's hood which read, "460 cubic inch." Hasty then took the truck for a seven-mile test drive. He noticed no problems with the truck at that time.
One week later, Hasty returned to Curry Motor. After some negotiation, Hasty was told that the price of the truck would be $4,000, less a $2,000 trade-in allowance for Hasty's 1978 Dodge automobile. Hasty returned on December 10, 1983, and purchased the truck.
A bill of sale was prepared by Curry Motor's bookkeeper at Mr. Curry's direction. The bill of sale contained a disclaimer that provided, in part, as follows: *Page 349 
 "The above automobile sold to purchaser is a used car on which there is no warranty, either as to mechanical condition, equipment, previous use, year and model, or mileage, unless specifically set forth in writing by an authorized representative of Seller.
 "After careful inspection and demonstration the undersigned purchases the above automobile with equipment at the prices and on the terms specified above, as is and shown and agrees not to demand or expect any equipment, parts, supplies, labor, services or rebates, for any reason whatsoever, and that no agreement other than herein written shall be valid."
The bill of sale also stated on its face, in handwriting, that the truck sold was a "1979 Ford F150 P.U." (pickup) with an odometer reading at the time of delivery of 88,419 miles.
Two days after purchasing the truck, Hasty drove it to Arab, Alabama. On the way back from Arab, the engine began to make unusual noises and the oil pressure gauge indicated below-normal oil pressure. The oil was two quarts low. Hasty changed the oil and refilled the crankcase. On a return trip from Huntsville a few days later, the engine began making the same unusual noises as before. The oil pressure gauge dropped again. Upon checking the oil level, Hasty found that the oil was again two quarts low. The truck poured smoke from the exhaust, leaving black spots on the pavement underneath. The truck consumed approximately one quart of oil for every 50 or 60 miles it was driven.
Hasty took the truck to Larry Richards at the Amoco Service Center in Albertville. Richards, an auto mechanic with 20 years' experience, disassembled the truck's engine and found that all the moving parts in the engine were worn out. Richards testified that the wear on the engine parts was consistent with at least 100,000 miles of travel rather than the 88,419 miles indicated on the bill of sale. He said that normally engines run for more than 100,000 miles before the engine needs to be rebuilt. Furthermore, he discovered that a cutting torch had been used to cut a hole in the flywheel, indicating that the engine had been replaced.
Richards ordered replacement parts for a 460-cubic-inch engine in accordance with the tag found under the truck's hood. When the replacement parts arrived, some of the parts would not fit the engine. The replacement pistons were too big and the replacement spark plugs were too small. Richards determined that the engine in the truck was actually a 429-cubic-inch engine rather than a 460-cubic-inch engine. In addition, Richards determined that the engine in the truck was a 1970 to 1973 model engine last manufactured in 1973, at least six years earlier than the year the truck was manufactured.
Hasty wrote Mr. Curry and told him of the problems he was having with the truck and asked Mr. Curry to contact him upon receipt of the letter; Mr. Curry did not respond.
The repair bill from the automobile service center was $1,187.94, which Hasty paid. Hasty testified that the 1979 Ford truck that he received was worth approximately $1,000 less than the same truck would have been worth if it had had a 1979 model 460-cubic-inch engine in it.
Mr. Curry testified that neither he nor anyone else at Curry Motor had any knowledge that the 1979 truck he sold to Hasty had a 1970 to 1973 engine in it. "We bought it through the Boaz auction sale and we sold it just like we got it," he said. He also stated that very often different engines are put in used cars and trucks, and that it is possible for a dealer to ascertain the model year of an engine by looking it up in a reference book such as that which Curry Motor maintained in its machine shop. The policy at Curry Motor, however, was to designate the model year of cars and trucks by the year of the body alone. Curry Motor's bookkeeper testified that Curry Motor does not want to know if a different model engine is put in a later model vehicle.
Hasty contends that the defendants are liable for breach of warranty and for fraud because they falsely asserted that the *Page 350 
truck was in good condition, that the engine of the truck had been overhauled at a cost of $500, that the engine was a 460-cubic-inch engine and had 88,419 miles on it, and that the pickup was a 1979 model. The trial judge charged the jury on both breach of warranty and fraud. The jury returned a verdict in favor of the plaintiff on both counts, $1,187.94 for breach of warranty, $10,000 for fraud. This appeal followed.
Defendants contend that the parties fully intended to exclude any warranty on the Ford pickup, as evidenced by the words "sold as is." They stress that the contract or bill of sale explicitly stated that there "[was] no warranty, either as to mechanical condition, equipment, previous use, year and model, or mileage." Therefore, defendants argue, the trial court erred in allowing the jury to consider the count alleging breach of warranty.
The defendants, however, fail to mention the clause following the portion of the disclaimer that they now rely on. It provides:
 "The above automobile sold to purchaser is a used car on which there is no warranty, either as to mechanical condition, equipment, previous use, year and model, or mileage, unless specifically set forth in writing by an authorized representative of Seller." (Emphasis added).
Hasty points out that the bill of sale, in a handwritten provision, stated that the truck was a 1979 Ford pickup with an odometer reading of 88,419 at the time of delivery. Thus there were express warranties made in writing by the seller to the effect that the truck was a 1979 model Ford with 88,419 miles.
In Kilborn v. Henderson, 37 Ala. App. 173, 65 So.2d 533
(1953), the plaintiff bargained with defendants for a 1940 Mercury automobile. Shortly after plaintiff bought the car, he had occasion to make some repairs and found that certain Mercury auto parts would not fit the engine. Upon investigation, he discovered that the automobile had a Ford engine of a 1932 to 1936 model. The plaintiff sued for breach of warranty, offering the sale contract executed by the parties, which described the car as a "Mercury 2 dr. Motor No. 99 A 177044, 8 Cylinder 1940 Model, license 5 C 3863." The plaintiff in Kilborn testified that the car was less valuable with the Ford engine than it would have been with a Mercury engine.
In Kilborn, the Alabama Court of Appeals, citing 77 C.J.S.Sales § 330, p. 1199, noted the general rule that there is no implied warranty of the quality or condition of a used automobile and noted that the rule of caveat emptor applies; however, express warranties may be given in the sale of a used motor vehicle. Furthermore, the representation that a vehicle is of a certain year of manufacture is a material representation. See generally, annot., Liability forRepresentations and Express Warranties in Connection with Saleof Used Motor Vehicle, 36 A.L.R.3d 125 (1971).
"A contract of sale of a motor vehicle designating it as a model of a particular year constitutes a warranty that it is of that model, and the warranty is broken by delivering to the buyer a model of a different year." Kilborn v. Henderson,37 Ala. App. at 177, 65 So.2d at 536, and Tuscaloosa Truck Tractor Co. v. Stewart, 37 Ala. App. 279, 67 So.2d 844, cert. den., 259 Ala. 528, 67 So.2d 846 (1953) quoting 77 C.J.S. Sales
§ 330(a), p. 1201.
The Court of Appeals in Kilborn opined that it is "a matter of common knowledge that the engine is an essential part of an automobile" and a "purchaser would have the right to expect an automobile described in the contract of sale as a 1940 Mercury to contain an engine of that make and model." Kilborn,37 Ala. App. at 177, 65 So.2d at 536. The court held that the evidence presented a question for the determination of the jury.
Likewise, we hold in the present case that the trial court did not err in submitting to the jury the issue of whether the defendants committed a breach of warranty by selling Hasty a pickup truck with a 1970-1973 engine where the bill of sale described the vehicle as a 1979 Ford pickup. Furthermore, as previously mentioned, the defendants stated in writing, on the bill *Page 351 
of sale, that the truck's mileage was 88,419 miles. Hasty presented evidence that the truck, or at least its engine, had actually been driven for more than 100,000 miles. It was proper to submit this count to the jury, and the jury's award of $1,187.94 to Hasty under the breach of warranty count was reasonable and supported by the evidence.
Defendants also argue that there is no evidence to support an award of punitive damages for fraud in this case. Specifically, they contend that there was no proof that the defendants had any knowledge of the falsity of the alleged misrepresentations.
The trial judge denied defendants' motion for a new trial. That ruling strengthens the presumption of correctness which accompanies a jury verdict. A reviewing court will not reverse such a ruling unless the evidence is so preponderant against the verdict as to indicate clearly that it is wrong and unjust.Walker v. Cardwell, 348 So.2d 1049 (Ala. 1977); 2A Ala. Digest,Appeal Error, Key 1005(4). This Court finds that the evidence in the present case is sufficient to support the jury's award of punitive damages.
The alleged misrepresentations were that the pickup truck was a 1979 Ford in good condition, that it had 88,419 miles on it, that the engine had been overhauled at a cost of approximately $500, and that the engine was a 460-cubic-inch engine. Contrary to defendants' arguments, parol evidence of these representations was admissible at trial. Fraud is an exception to the parol evidence rule. Hinds v. Plantation Pipe Line Co.,455 F.2d 902 (5th Cir. 1972). Parol evidence of fraud is always admissible, even though there is a completely integrated writing. Parker v. McGaha, 294 Ala. 702, 321 So.2d 182 (1975).
Punitive damages may be recovered in a fraud action if the fraudulent misrepresentation was malicious, oppressive, or gross, or made with knowledge of its falseness, or so recklessly made as to amount to the same thing or was made with the purpose of injuring the plaintiff. Ala. Code 1975 § 6-5-101;American Honda Motor Co., Inc. v. Boyd, 475 So.2d 835 (1985).
In upholding a punitive damages award in InternationalResorts, Inc. v. Lambert, 350 So.2d 391 (Ala. 1977), where the claim of deceit was defended on the ground of lack of knowledge of the falsehood, this Court said at 395:
 "There is evidence from which the jury could have concluded that International Resorts misrepresented the facts to these plaintiffs and, whether made intentionally to deceive, or merely made recklessly without regard to their truth, if made so heedlessly without any regard to the consequences, they were sufficient to support the jury verdict."
In Ex parte Lewis, 416 So.2d 410 (Ala. 1982), this Court held that evidence of a dealer's reckless disregard of the consequences in failing to ascertain the correct model year of a van before selling it to the buyer supported a finding of the dealer's intent to injure and thus warranted an award of punitive damages for reckless misrepresentation in the sale of the van. The facts in Lewis were that the defendant received, as a trade-in, a 1969 model Ford van. Defendant was told by the prior owner that the van was a 1972 model. The defendant then told the plaintiff that it was a 1972 model. The plaintiff purchased the van relying on defendant's representation. The evidence in Lewis was that the 1969 and 1972 models of Ford vans were identical in appearance. They were distinguishable, however, when their serial numbers were compared in a book maintained in the parts departments of automobile dealers. The defendant did not compare the serial number of the van with the book in its parts department, but relied only on the representation of the prior owner. This Court held that the jury was warranted in awarding punitive damages based on reckless misrepresentation.
In the present case, Curry Motor had ready access to the reference materials necessary to determine the model year of a vehicle's engine. It is no defense for Curry Motor that it relied on the former owner's *Page 352 
representation of the model year of the truck and its engine.Ex parte Lewis. Mr. Curry testified that he knew that used cars and trucks often have non-original motors. A Curry Motor employee testified that the company does not want to know if the model year of the engine is different. Furthermore, if the jury believed that Curry Motor did, in fact, have the pickup truck's engine overhauled (though it is certainly questionable that the jury did, in light of the testimony of the automobile mechanic used by Hasty), then the jury could have reasonably assumed that Curry Motor would have been told that the engine was not a 1979 model. There was testimony at trial that in order to overhaul an engine, the mechanic has to know what year the engine is in order to obtain parts that fit.
In Cooper Chevrolet, Inc. v. Taliaferro, 439 So.2d 158
(Ala.Civ.App. 1983), the plaintiff sued the defendant car dealer for fraud. Allegedly, the defendant represented to the plaintiff that a 1978 Ford Pinto, which plaintiff subsequently purchased, had had only one prior owner. The plaintiff later discovered that the prior owner had been a business concern that used the vehicle for deliveries. Furthermore, the original engine had been replaced with a 1975 Mercury Bobcat engine. The Court of Civil Appeals held that the evidence was sufficient to support the jury's award of punitive damages for fraud:
 "[T]he jury could have reasonably concluded from the evidence that Cooper Chevrolet knew or should have known that the automobile did not have the original engine and, in fact, had an engine three years older than the automobile itself and that Cooper Chevrolet acted recklessly by its representations and that the representations were made so recklessly as to amount to knowledge of their falsity. Put another way, the jury could have reasonably concluded that Cooper Chevrolet represented the automobile as a 1978 Ford Pinto when in reality it had a 1975 Mercury Bobcat engine and that such representation was made with a reckless disregard to the truth amounting to the same as knowledge of the falsity of the representation." 439 So.2d at 160.
The same applies to the present case. Based on the discussion above, the evidence of the representation that the vehicle was a 1979 Ford pickup is sufficient by itself to support an award for punitive damages. Having found no error, we affirm the judgment.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.